United States Courts
Southern District of Texas
FILED

JUL 0 2 2010

Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OMEGA BUNKER f/k/a OMEGA SHIPPING AGENCY | § | |
| VS. | § | |
| M/V GULMAR CONDOR ENGINES, TACKLE, ETC., *IN REM*; GULMAR ENERGY S.A., GULMAR OFFSHORE MIDDLE EAST, L.L.C., GULMAR CONDOR MARINE INVESTMENT S.A., GULMAR EAGLE MARINE INVESTMENT S.A., and GULMAR BADARO MARINE INVESTMENT S.A., *IN PERSONAM* | § | C.A. NO. 3:10-CV-257<br>[Admiralty - Rule 9(h)] |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, OMEGA BUNKER f/k/a OMEGA SHIPPING AGENCY, against the M/V GULMAR CONDOR, her engines, tackle, etc., *in rem*; GULMAR ENERGY S.A., GULMAR OFFSHORE MIDDLE EAST, L.L.C., GULMAR CONDOR MARINE INVESTMENT S.A., GULMAR EAGLE MARINE INVESTMENT, S.A., and GULMAR BADARO MARINE INVESTMENT S.A., *in personam*, and allege as follows:

**I.**

This is a cause of action for breach of maritime contracts to provide bunkers and each is within the admiralty and maritime jurisdiction of the United States and this Honorable Court in accordance with 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims. The general maritime law is thus invoked.

**II.**

Plaintiff, Omega Bunker f/k/a Omega Shipping Agency, is a business entity duly organized and existing under and by virtue of the laws of Italy, with offices located at Via Circonvallazione 6, 30171 Mestre, Venice, Italy.

**III.**

The M/V GULMAR CONDOR, IMO Number 7628760, is a crane ship registered in the Marshall Islands. Said vessel is now, or will be during the pendency or process hereunder, within this district and within the jurisdiction of this Honorable Court, and she is presently lying afloat at Gulf Copper Drydock & Rig Repair, Galveston, Texas. With respect to the M/V GULMAR CONDOR, this is a Complaint *in rem*.

**IV.**

Upon information and belief, Gulmar Energy S.A., Gulfmar Middle East, L.L.C., Gulmar Condor Marine Investment, Gulmar Eagle Marine Investment, S.A., and Gulmar Badaro Marine Investment S.A. (hereinafter "Gulmar Group") are foreign entities not authorized to do business in Texas but, at all material times, did business in Texas by entering into contracts and/or relations with Texas entities with the intention of conducting commerce, and specifically, but not limited to maritime commerce within the state which constitutes doing business in Texas in accord with Section 17.042 of the Texas Civil Practice & Remedies Code.

At all relevant times hereinafter mentioned and material hereto, Defendant Gulmar Energy S.A. is at least an affiliate and likely the parent corporation of Defendants Gulmar Offshore Middle East L.L.C., Gulmar Condor Marine Investment S.A., Gulmar Eagle Marine Investment S.A., and Gulmar Badaro Marine Investment S.A. Defendant Gulmar Energy S.A. is a foreign corporation or business entity.

At all relevant times hereinafter mentioned and material hereto, Defendant Gulmar Offshore Middle East L.L.C. was and presently is the ISM manager and ship manager of the M/V GULMAR CONDOR, GULMAR EAGLE, and GULMAR BADARO. At all relevant times hereinafter mentioned and material hereto, Defendant Gulmar Offshore Middle East, L.L.C. was the time charterer of the M/V TIOSA PALADIN. Gulmar Offshore Middle East L.L.C. is a foreign corporation or business entity.

At all relevant times hereinafter mentioned and material hereto, Defendant Gulmar Condor Marine Investment S.A. was and presently is the registered owner of the M/V GULMAR CONDOR. Defendant Gulmar Condor Marine Investment S.A. is a foreign corporation or business entity.

At all relevant times hereinafter mentioned and material hereto, Defendant Gulmar Eagle Marine Investment S.A. was and presently is the registered owner of the M/V GULMAR EAGLE. Defendant Gulmar Eagle Marine Investment S.A. is a foreign corporation or business entity.

At all relevant times hereinafter mentioned and material hereto, Defendant Gulmar Badaro Marine Investment S.A. was and presently is the registered owner of the M/V GULMAR BADARO. Defendant Gulmar Badaro Marine Investment S.A. is a foreign corporation or business entity.

Each of the foreign entities that make up the Gulmar Group are located outside the jurisdiction of this Honorable Court, and have no regular place of business within the State of Texas, and after inquiry, advices have been received that none of the foreign entities that make up the Gulmar Group can be found within this District, as the term is used in Rule B of the Supplemental Rules for Certain Admiralty Claims. However, there are now certain assets, goods, chattels, credits, and effects belonging to, or claimed by each of the entities that make up

the Gulmar Group within this District, to wit: the M/V GULMAR CONDOR, a crane ship that is currently docked in Galveston, Texas.

Plaintiff is informed and believes, and on that basis alleges, that each Defendant is liable to the Plaintiff under the theory of alter ego. In support of this theory it is apparent, that at all relevant times, the Defendants were the agents, servants, employees, principals, joint venturers, alter egos and/or partners of each other. Plaintiff is further informed and believes, and on that basis alleges, that in doing the things alleged in this Complaint, each Defendant was acting within the scope of authority conferred upon that defendant by the consent, approval and/or ratification of the other Defendants, whether said authority was actual or apparent.

Furthermore, the foreign entities that make up the Gulmar Group are non-residents as that term is used in Subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code, but have not designated or maintained a registered agent in Texas. Alternatively, although each of the foreign entities that make up the Gulmar Group may not be subject to the jurisdiction of the courts of general jurisdiction of Texas or any other state, Omega Bunker's claims arise under applicable maritime law and the foreign entities that make up the Gulmar Group each have sufficient national minimum contacts with the United States as a whole. The exercise of personal jurisdiction over each of the foreign entities that make up the Gulmar Group is consistent with the Constitutions and other laws of the United States and Texas. Accordingly, serving each of the foreign entities that make up the Gulmar Group with a summons is effective to establish personal jurisdiction over them. Gulmar Energy S.A., Gulmar Offshore Middle East L.L.C., Gulmar Condor Marine Investment S.A., Gulmar Eagle Marine Invetstment S.A. and Gulmar Badaro Marine Investment S.A. can be served by serving the Texas Secretary of State pursuant to Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Process or notice can be sent to each defendant at

Al Hasan Avenue, Al Borg Tower, 15th Floor, P.O. Box 2533, Sharjah, United Arab Emirates (note that all entities have the same mailing address).

V.

Plaintiff would show that Defendants GULMAR ENERGY S.A., GULMAR OFFSHORE MIDDLE EAST, L.L.C., GULMAR CONDOR MARINE INVESTMENT S.A., GULMAR EAGLE MARINE INVESTMENT, S.A., and GULMAR BADARO MARINE INVESTMENT S.A. are each liable to Plaintiff for each cause of action Plaintiff may have against these Defendants because of the theory of alter ego. Further, Plaintiff would show that these Defendants are sham corporate structures who failed to follow corporate formalities and as such the act of one is the act of the other and their corporate identity should be disregarded. Further, Plaintiff would show that management and the operation of these Defendants are assimilated to the extent that the subsidiaries are simply a name or conduit through which the parent conducts its business so that the corporate fiction should be disregarded.

**VI.**

**M/V GULMAR CONDOR**

Plaintiff and Gulmar Offshore Middle East L.L.C., on behalf of the vessel and the Gulmar Group, entered into a Maritime Contract for supply of bunkers to the M/V GULMAR CONDOR (IMO No. 7628760) dated February 4, 2010 (the "Bunker Contract"). A true and correct copy of the Bunker Contract is attached hereto as Exhibit A and made a part of this Verified Complaint. Under the Bunker Contract, the Master/Owners/Charterers/Operators of the M/V GULMAR CONDOR and M/S Gulmar Offshore Middle East L.L.C. purchased 680 MTS of bunkers (ABT. 800 CBM – Gasoil DMA, Sulphur Max 0.1%) from the Plaintiff at the rate of $658.00 USD/MTD Ex-pipe, plus oil spill fees of $0.58 USD/MTD, plus Federal Leaking

Underground Storage Tank ("LUST") tax of $0.30 USD/MT (total due $447,440.00 USD) to be delivered in the port of Fourchon, Louisiana.

On February 7, 2010, Gulmar Offshore Middle East L.L.C. provided Omega Bunker with a purchase order to confirm the terms of the agreement. A true and correct copy of the purchase order is attached hereto as Exhibit B and made a part of this Verified Complaint. In Section 4 – Terms and Conditions, Gulmar Offshore Middle East L.L.C. confirms that Omega Bunker's invoice "shall be payable not later than 60 days after receipt of a duly executed invoice at the office of Gulmar Offshore." Omega Bunker complied with the purchase order requirement and provided an invoice to Gulmar Offshore Middle East on February 7, 2010. A true and correct copy of the invoice is attached hereto as Exhibit C and made a part of this Verified Complaint. According to the Bunker Delivery Report, the bunkers were delivered in the port of Fourchon, Louisiana to the M/V GULMAR CONDOR by Talens Marine and Fuel on February 7, 2010. A true and correct copy of the Bunker Delivery Report for the M/V GULMAR CONDOR is attached hereto as Exhibit D and made a part of this Verified Complaint. The terms of the Bunker Contract, as reaffirmed by the purchase order and invoice, establish that payment for the bunkers was due within sixty (60) days from the date of delivery of the bunkers; as such, payment for the bunkers was due on April 7, 2010. All conditions precedent to filing this action have been performed by the Plaintiff; however, the Defendants have failed to make payment on the outstanding invoice for bunker delivery.

**VII.**

**M/V TOISA PALADIN**

Plaintiff and Gulmar Offshore Middle East L.L.C., on behalf of the vessel and the Gulmar Group, and charterer of the M/V TOISA PALADIN (IMO No. 9388091) entered into a Maritime Contract for supply of bunkers to the vessel, dated February 24, 2010 (the "Bunker

Contract"). A true and correct copy of the Bunker Contract is attached hereto as Exhibit E and made a part of this Verified Complaint. Under the Bunker Contract, Master/Owners/Charterers/Operators of the M/V TOISA PALADIN and M/S Gulmar Offshore Middle East L.L.C. purchased 400 MTS of bunkers (Gasoil DMA, ISO Specs 8217 2005) from the Plaintiff at the rate of $618.00 USD/MTD to be delivered by truck in the port of Sharjah, United Arab Emirates.

On February 24, 2010, Gulmar Offshore Middle East L.L.C. provided Omega Bunker with a purchase order to confirm the terms of their agreement. A true and correct copy of the purchase order is attached hereto as Exhibit F and made a part of this Verified Complaint. In Section 4 – Terms and Conditions, Gulmar Offshore Middle East confirms that Omega Bunker's invoice "shall be payable not later than 60 days after receipt of a duly executed invoice at the office of Gulmar Offshore." Omega Bunker complied with the purchase order requirement and provided an invoice to Gulmar Offshore Middle East on February 26, 2010. A true and correct copy of the invoice is attached hereto as Exhibit G and made a part of this Verified Complaint. According to the Bunker Delivery Report, the bunkers were delivered to the M/V TOISA PALADIN by Zad Fuel on February 27, 2010 in the port of Sharjah, United Arab Emirates. A true and correct copy of the Bunker Delivery Report for the M/V TOISA PALADIN is attached hereto as Exhibit H and made a part of this Verified Complaint. The terms of the Bunker Contract, as reaffirmed by the purchase order and invoice, establish that payment for the bunkers was due within sixty (60) days from the date of delivery of the bunkers; as such, payment for the bunkers was due on April 26, 2010. All conditions precedent to filing this action have been performed by the Plaintiff; however, the Defendants have failed to make payment on the outstanding invoice for bunker delivery.

## VIII.

## M/V GULMAR BADARO

Plaintiff and Gulmar Offshore Middle East L.L.C. on behalf of the vessel and the Gulmar Group, entered into a Maritime Contract for supply of bunkers to the M/V GULMAR BADARO (IMO No. 9009310), dated March 1, 2010 (the "Bunker Contract"). A true and correct copy of the Bunker Contract is attached hereto as Exhibit I and made a part of this Verified Complaint. Under the Bunker Contract, the Master/Owners/Charterers/Operators of the M/V GULMAR BADARO and M/S Gulmar Offshore Middle East L.L.C. purchased 100–105 MTS of bunkers (four full trucks – Gasoil DMA, S.N.D.P. Specs to be applied, weights as per RTW figures not disputable) from the Plaintiff at the rate of $855.00 USD/MT for delivery by truck, duty paid, in the port of Menzel Bourguiba, Tunisia.

On March 1, 2010, Gulmar Offshore Middle East L.L.C. provided Omega Bunker with a purchase order to confirm the terms of the agreement. A true and correct copy of the purchase order is attached hereto as Exhibit J and made a part of this Verified Complaint. In Section 4 – Terms and Conditions, Gulmar Offshore Middle East confirms that Omega Bunker's invoice "shall be payable not later than 60 days after receipt of a duly executed invoice at the office of Gulmar Offshore." Omega Bunker complied with the purchase order requirement and provided an invoice to Gulmar Offshore Middle East on March 24, 2010. A true and correct copy of the invoice is attached hereto as Exhibit K and made a part of this Verified Complaint. According to the Bunker Delivery Report, the bunkers were delivered to the M/V GULMAR BADARO by AGIL - Société Nationale de Distribution de Pétrole on March 3 2010 at the port of Menzel Bourguiba, Tunisia. A true and correct copy of the Bunker Delivery Report for the M/V GULMAR BADARO is attached hereto as Exhibit L and made a part of this Verified Complaint. The terms of the Bunker Contract, as reaffirmed by the purchase order and invoice, establish that

payment for the bunkers was due within sixty (60) days from the date of delivery of the bunkers; as such, payment for the bunkers was due on May 1, 2010. All conditions precedent to filing this action have been performed by the Plaintiff; however, the Defendants have failed to make payment on the outstanding invoice for bunker delivery.

**IX.**

**M/V GULMAR EAGLE**

Plaintiff and Gulmar Offshore Middle East L.L.C. on behalf of the vessel and the Gulmar Group entered into a Maritime Contract for supply of bunkers to the M/V GULMAR EAGLE (IMO No. 7407752), dated March 1, 2010 (the "Bunker Contract"). A true and correct copy of the Bunker Contract is attached hereto as Exhibit M and made a part of this Verified Complaint. Under the Bunker Contract, the Master/Owners/Charterers/Operators of the M/V GULMAR EAGLE and M/S Gulmar Offshore Middle East L.L.C. purchased 250 MTS of bunkers (Gasoil DMA) from the Plaintiff at the rate of $705.00 USD/MT; plus $6,000.00 USD for barging cost, lump sum; plus $200.00 USD for fuel surcharge, lump sum; plus $0.50 USD/GBBL pipeline charges; plus $0.05 USD/GBBL pollution fee; and plus $250.00 USD for overtime, lump sum if incurred, for delivery in the port of Cristobal, Republic of Panama.

On March 1, 2010, Gulmar Offshore Middle East L.L.C. provided Omega Bunker with a purchase order to confirm the terms of their agreement. A true and correct copy of the purchase order is attached hereto as Exhibit N and made a part of this Verified Complaint. In Section 4 – Terms and Conditions, Gulmar Offshore Middle East confirms that Omega Bunker's invoice "shall be payable not later than 60 days after receipt of a duly executed invoice at the office of Gulmar Offshore." Omega Bunker complied with the purchase order requirement and provided an invoice to Gulmar Offshore Middle East on March 25, 2010. A true and correct copy of the invoice is attached hereto as Exhibit O and made a part of this Verified Complaint. According to

the Bunker Delivery Report, the bunkers were delivered to the M/V GULMAR EAGLE by Triton Energy of Panama, Corp. on March 25, 2010 at the port of Cristobal, Republic of Panama. A true and correct copy of the Bunker Delivery Report for the M/V GULMAR EAGLE is attached hereto as Exhibit P and made a part of this Verified Complaint. The terms of the Bunker Contract, as reaffirmed by the purchase order and invoice, establish that payment for the bunkers was due within sixty (60) days from the date of delivery of the bunkers; as such, payment for the bunkers was due on May 1, 2010. All conditions precedent to filing this action have been performed by the Plaintiff; however, the Defendants have failed to make payment on the outstanding invoice for bunker delivery.

X.

**BREACH OF CONTRACT ON OVERDUE OUTSTANDING NECESSARIES PROVIDED TO VESSELS**

On April 22, 2010, Omega Bunker contacted Gulmar Offshore Middle East L.L.C. regarding the overdue outstanding invoices. A total of four invoices have been identified as being outstanding and overdue.

| VESSEL | DELIVERY PORT | AMOUNT | INTEREST | LATE FEES |
|---|---|---|---|---|
| GULMAR CONDOR | Port Fourchon, USA | $379,681.58 | $19,997.42 | $500.00 |
| TOISA PALADIN | Sharjah, UAE | $231,156.72 | $6,934.70 | $500.00 |
| GULMAR BADARO | Menzel Bourguiba, Tunisia | $89,798.94 | $2,514.37 | $500.00 |
| GULMAR EAGLE | Cristobal, Republic of Panama | $183,632.09 | $5,141,70 | $500.00 |
| | Totals | $884,269.33 | $29,588.19 | $2,000.00 |
| | **Grand Total** | **$915,857.52** | | |

To date Plaintiff has yet to receive payment for the bunkers provided by Omega Bunker to the four vessels. The Defendants are in breach of contract by contracting and accepting the bunkers

without making payment. The amounts owed continue to increase on a daily basis, including interest, late charges and penalties as outlined in the Bunker Contracts.

The standard terms and conditions of sale, attached to the Bunker Contracts, provides for attorney's fees and expenses (Article X). Plaintiff estimates that it will incur at least $80,000.00 USD during litigation of the dispute between Plaintiff and the entities that make up the Gulmar Group.

**XI.**

By reason of the foregoing premises Plaintiff is the holder of a maritime lien against the M/V GULMAR CONDOR, *in rem*, and maritime claims against the Gulmar Group, as well as the individual entities that make up the Gulmar Group, *in personam* in the amount of NINE HUNDRED AND FIFTEEN THOUSAND EIGHT HUNDRED FIFTY-SEVEN AND 52/100 DOLLARS ($915,857.52) exclusive of interests, costs and fees for which the maritime remedy of Attachment and Seizure is available to Plaintiff pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims and pursuant to the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff OMEGA BUNKER f/k/a OMEGA SHIPPING AGENCY prays:

1. That process in due form of law may issue against the M/V GULMAR CONDOR, her engines, tackle, apparel, etc., *in rem*, pursuant to Rule C of the Supplemental Rules of Certain Admiralty & Maritime Claims and the rules and practices of this Honorable Court;

2. That if the Defendants that make up the Gulmar Group cannot be found within this District, upon hearing before this Court, process in due form of law may issue pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims according to the rules of practice of this Court to attach and seize in the amount stated in this Complaint their assets, goods, and chattels, namely the M/V GULMAR CONDOR, her engines, tackle, etc.;

3. That as soon as practicable following the attachment and/or seizure of the assets, goods, chattels, and/or other effects herein of the entities that make up the Gulmar Group, a further hearing be held by this Court to hear any objections by the entities that make up the Gulmar Group and/or other parties claiming an interest in the M/V GULMAR CONDOR;

4. That all persons claiming any right, title or interest in said vessel may be cited to appear and to answer, upon oath, all and singular, the matters aforesaid;

5. That, pursuant to a Warrant of Seizure (or Arrest), the United States Marshal of this District arrest said vessel, and retain same under arrest pending the further orders of this Court;

6. That the lien arising under the Bunker Contracts attached hereto as Exhibits A, E, I, and M may be declared to be a valid and subsisting lien upon the M/V GULMAR CONDOR, and prior and superior to the interest, liens, and claims of any and all persons, firms, or corporations, whatsoever;

7. That in default of the payment of the sums found to be due and payable under the Bunker Contract securing same, within the time to be limited by a decree of this Honorable Court, together with a sum sufficient to pay the costs of this suit, it may be decreed that any and all persons, firms, and corporations claiming any interest in said vessel are forever barred and foreclosed of and from all rights or equity of redemption or claim of, in, or to the said vessel, her engines, tackle, etc., and every part thereof;

8. That a judgment may be entered in favor of the Plaintiff against the M/V GULMAR CONDOR, her engines, tackle, etc., *in rem*; GULMAR ENERGY S.A., GULMAR OFFSHORE MIDDLE EAST L.L.C., GULMAR CONDOR MARINE INVESTMENT S.A., GULMAR EAGLE MARINE INVESTMENT S.A., and GULMAR BADARO MARINE INVESTMENT S.A, *in personam,* for the amount of the claim, plus pre-judgment interest, post-judgment interests, attorneys' fees and costs, and that the M/V GULMAR CONDOR may be condemned and sold to pay same;

9. That in the event that the proceeds of the sale of the M/V GULMAR CONDOR are insufficient to satisfy the amounts owing by the entities that make up the Gulmar Group, including the bunker charges, penalties, interest thereon, attorneys' fees, and costs of this proceeding, that the Plaintiff recover judgment against the Defendants GULMAR ENERGY S.A., GULMAR OFFSHORE MIDDLE EAST L.L.C., GULMAR CONDOR MARINE INVESTMENT S.A., GULMAR EAGLE MARINE INVESTMENT S.A., and GULMAR BADARO MARINE INVESTMENT S.A, *in personam*, and against any parties filing a claim to the M/V GULMAR CONDOR for such deficiency; and

10. That Plaintiff may have such other and further relief as the Court and justice may deem just and appropriate under the circumstance of the cause.

Respectfully submitted,

By: ______________________________

William P. Glenn, Jr., #00784136
Kelly M. Haas, #24059874
The Hunter Building
306 – 22nd Street, Suite 301
Galveston, Texas 77550
Telephone: (409) 763-1623
Facsimile: (409) 763-3853

ATTORNEYS FOR PLAINTIFF,
OMEGA BUNKER f/k/a OMEGA SHIPPING AGENCY

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.