# Exhibit A

Case 3:10-cv-00257 Document 1-4 Filed in TXSD on 07/02/10 Page 1 of 9

**Finance**

**Da:** Bunker [bunker@omegabunker.com]
**Inviato:** venerdì 5 febbraio 2010 10.07
**A:** 'Sajan Jacob'
**Oggetto:** M/v GULMAR CONDOR - Bunker supply at PORT FOURCHON
**Priorità:** Alta
**Allegati:** AAAA TERMS AND CONDITIONS.pdf


OMEGA BUNKER
The best price at every sea

Mestre, February 4th, 2010

TO Gulmar Offshore Middle East L.L.C.
ATT. Mr. Jacob Sajan

RE: M/V GULMAR CONDOR – BUNKER SUPPLY AT PORT FOURCHON

IN ACCORDANCE WITH INSTRUCTIONS RECEIVED, WE ARE PLEASED TO CONFIRM BUNKER NOMINATION PLACED AS FOLLOWS:

| | |
|---|---|
| VESSEL | : '' GULMAR CONDOR '' IMO N. 7628760 |
| BUYERS | : MASTER/OWNERS/CHARTRS/OPERATORS M/V GULMAR CONDOR AND M/S Gulmar Offshore Middle East L.L.C., Al Husan Avenue, Al Barj Tower, 15th fl., POB 2533 SHARJAH, United Arab Emirates |
| SELLERS | : M/S OMEGA SHIPPING AGENCY- VENICE / ITALY |
| SUPPLIERS | : TALEN'S |
| DELY PORT | : PORT FOURCHON – Louisiana – U.S.A. |
| DELY DATE/S | : 5TH FEBRUARY 2010 |
| QNTY/QLTY | : MTS 680 (ABT. 800 CBM) GASOIL DMA, Sulphur Max 0,1% |
| PRICE/S | : USD 658.00 / MTD EX-PIPE, plus Oil Spill Fees USD. 0,58/MT., plus Federal Lust Tax USD. 0,30/MT. |
| EXTRAS | : LOCAL TAXES, SURCHARGES, STORAGES, OVERTIME, IF ANY, TO BE FOR BUYER'S ACCOUNT |
| PAYMENT | : WITHIN 60 DAYS FROM DATE OF DELIVERY, AGAINST FAX INVOICE, BY TELEGRAPHIC TRANSFER. ALL BANK CHARGES, IF ANY, TO BE PAID BY THE REMITTER; WHERE DUE DATE FALLS ON A WEEKEND OR PUBLIC HOLIDAY, PAYMENT TO BE EFFECTED NOT LATER THAN THE PRECEEDING BANKING DAY. LATE RECEIPT OF FUNDS WILL INCUR AN INTEREST CHARGE OF 1,5 (ONE AND A HALF) PERCENT PER MONTH PRO-RATA, ON A DAILY BASIS, TO BE CALCULATED FROM THE DUE DATE UNTIL RECEIPT BY THE SELLER OF CLEARED FUNDS, AND WILL ATTRACT A LATE PAYMENT FEE OF USD 500,00 LUMP SUM. |
| TERMS | : THIS CONTRACT IS MADE SUBJECT TO OUR STANDARD TERMS AND CONDITIONS OF SALE, COPY OF WHICH IS ATTACHED HERETO. BY ACKNOWLEDGING YOUR AGREEMENT TO THIS TRANSACTION YOU AGREE AND REPRESENT THAT YOU HAVE READ AND AGREE THAT SUCH TERMS ARE INCORPORATED INTO THE CONTRACT MADE BETWEEN US AS IF THE SAME WERE EXPRESSLY SET OUT IN WRITING HERE BELOW. |
| SHIP AGENT | : M/S SEAGULL MARINE Inc. – Phone +1 504 465 1017 |
| REMARKS | : Please be advised that no "NO-LIEN" stamps on delivery |

05/02/2010

PLAINTIFF'S EXHIBIT A

receipts will be accepted nor considered valid.
Present confirmation will be considered null and void, Without notification from buyers, if the vessel is not in position to take bunker within 5 days from delivery date scheduled afore.
Please ensure that Master/Agents are instructed to liaise closely with suppliers to arrange final quantities and timings for an expeditious supply.
In case of delivery by barge, barge figures and barge crew drawn samples, which are duly witnessed by vessel's Chief Engineer or his representative, are to be final and binding to all parties concerned.
Delivery is subject to best endeavour basis if the time and/or date are changed by the buyer or his Agent. The Seller will not be liable for any demurrage claim.
Please ensure the Master/vessel's representative witnesses on the supplier's delivery equipment:
1) the drawing by the supplier of the representative samples of each of the fuels to be supplied and receives and retains a sealed and signed container of each of those samples, and
2) the soundings and measurements of quantities before and after delivery.
Delivery is subject weather conditions.
Delivery will be effected in compliance with regulations 14(1) and regulations 18(1) of Annex VI of Marpol 73/78.

DOCUMENTATION
It is the Customer's responsibility to obtain and/or provide any necessary documentation including, but not limited to, permits, licenses, certificates and approvals that may be required to enable our Company, Physical Supplier and the Customer to execute their obligations under the Agreement and/or to comply with any relevant laws, regulations, directions or notices of customs, port or other authorities.  Any costs, expenses, fines, liabilities, losses, damages, claims, demands and charges which might be incurred or suffered owing to the Customer's failure to obtain the necessary documentation in good time will be for Customer's account.

INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND PORT FACILITIES (ISPS CODE)
The ISPS Code entered into force on 1 July 2004. Port facilities and other relevant authorities responsible for port security, including offshore bunkering facilities, will require ships to comply with the requirements of the ISPS Code, which include, but are not limited to, having a valid International Ship Security Certificate (ISSC). Port facilities and other relevant authorities may require pre-arrival information including, but not limited to, confirmation that the vessel has a valid ISSC. Failure to have a valid ISSC and/or to comply with any measures required by any port facility or relevant authority in relation to the ISPS Code may result in delays to the vessel or even refusal to entry to the port or bunkering facilities. Any such delay or refusal may affect the supply to the vessel of any Products ordered.  Any costs, expenses, damages, losses and liabilities incurred or suffered by our Company or by Physical Supplier due to delays in supplying the Product/s ordered or cancellation of the same as a result of the failure of the vessel and/or vessels interests to comply with the application of the ISPS Code, including any measures required by any port facility or

05/02/2010

relevant authority will be for Customer's account.  Without prejudice to the generality of the foregoing, these costs, expenses, losses and liabilities include, but are not limited to, demurrage and cancellations costs.

We thank you for fixing this supply with us.

Best regards

**OMEGA BUNKER - VENICE**
**Mario Berghini**

Omega Shipping Agency s.n.c. di Battistello G. & C.
Via Circonvallazione, 6 • 30171 Venezia Mestre • Italy • P.IVA IT03167830276
Tel. +39 041 2380411 • Fax +39 041 2380440
email info@omegabunker.com • www.omegabunker.com

05/02/2010

This is a statement of the terms and conditions on which Omega Bunker Srl (registered with Venice Chamber of Commerce under nos. 52105/1999 – R.E.A. 286773) will sell marine fuel. No variation of these terms of sale shall be valid unless expressly agreed in writing by the Seller.

ARTICLE I

1) Except as otherwise agreed to in writing the following terms and conditions shall apply to all sales of Omega Bunker Srl goods as well as to the performance of any subsequent agreement resulting from such sales. These terms and conditions shall also apply to all our offers and other agreements. For easy reference, the party contracting with us shall hereinafter be referred to as **the Buyer**. The term Buyer will also be used even when the agreement is not, in actual fact, an agreement of sale. Without our written authorization, no representative of ours shall be empowered to make any further contractual stipulations.
2) These conditions shall continue to be binding upon the legal relationship with the Buyer to exclusion of any other general conditions, including those of the Buye, unless the contrary is expressly stipulated in writing. Without our written authorisation, no representative of ours shall be empowered to make any further agreements.

ARTICLE II

Our offers shall not be binding unless we have expressly declared the contrary in writing. We shall be bound after an order has been accepted by us in writing, or has been executed by us. In the latter case, our delivery notes and our invoices shall be proof of the order and acceptance thereof.

ARTICLE III

1) If information concerning the grade, content and/or quality of our goods has been quoted by us in offers, price lists or otherwise, the correctness of that information can only be guaranteed if it has been declared directly by us to the Buyer in writing. Unless otherwise agreed in writing, samples and/or analysis results supplied by us shall merely indicate the nature and quality of the goods by rough approximation.
2) If goods supplied by us do not correspond to the grade, content and/or quality of the Buyers requirements, or are not in accordance with the sample or analysis supplied by us (the correctness of which has been guaranteed directly by us to the Buyer in writing) or if supply and delivery do not in any other way conform with what has been agreed upon, we shall – at our free option – take back the goods sold or allow a price reduction to a sum not greater than the amount of the real difference in value. Furthermore, we shall not be liable for any adverse effect resulting therefrom on the part of the Buyer and/or third parties. The Buyers shall be under full obligation to compensate us against any claim made by third parties in respect thereof.
3) We shall entertain no claim of any nature unless notice in writing thereof is received by us within a period not exceeding eight (8) days from completion of delivery of those goods and should, when applicable, be accompanied by a representative sample of the said goods. We require that this representative sample be drawn by an independent expert and must weigh at least 5000 grams. When complaints are brought against us by the Buyer in regard to the quality and/or quantity of goods supplied by us, this will not decrease his liability to pay the full invoice amount contractually agreed upon between the Buyer and ourselves.
4) Complaints lodged by the Buyer shall not diminish his obligation to make payment in full. We shall at all times – both prior to and after delivery – be entitled to require of the Buyer that he shall, in such manner as shall be deemed sufficient by us, give security for the proper performance of his obligations existing as against us in such manner as shall be designated by us. As long as this security has not been given, we shall not be under any obligation to make delivery, under any contract, with the Buyer. If this security is given by opening of a credit, the said credit shall in that event – unless otherwise expressly agreed in writing – be irrevocable, transferable, confirmed and devisable, shall have been opened with the bank approved by us and payable against invoice, the customary shipping and/or forwarding documents and weight note. All costs and expenses incidental of the opening of the credit shall be borne and paid by the Buyer.
5) The Buyer must prove to us in writing and within eight (8) days of delivery that the error to which his claim relates already existed at the time of delivery. When no such proof is forthcoming all rights to the claim are lost. We shall carry out measurements and weighings to the best of our knowledge and ability. The Buyer shall have the right to attend our measurements and weighings, provided that he always notifies us of his wish to that effect in due time. Our barge meter readings or other soundings carried out by our barge personnel as to the quantities of marine fuel oil delivered are conclusive and binding. The Buyer has the right to ask the barge personnel to sound the barge in his presence before and after discharging. If the Buyer has not exercised this right, he shall not be entitled to claim against quantities delivered and has no judicial rights whatsoever in these matters. In the event these soundings lead to a difference between the barge meter readings and the results of these soundings the Buyer and ourselves shall order an independent surveyor to clear the dispute. If a barge is not equipped with meters, the Buyer shall require the barge personnel to sound the barge in his presence before and after discharging, failing which the soundings carried out by the barge personnel without the Buyers' presence shall be conclusive and binding. The party found to be in fault will have to pay all costs arising from the survey. The Buyer is also allowed, at any time convenient, to order an independent survey of the goods.
6) No action shall lie against us unless the same is brought within sixty (60) days from completion of delivery of goods, after which all rights and remedies shall be deemed to be extinguished.
7) When the quantity sold by us has only been approximately indicated between the Buyer and us, we shall, unless otherwise agreed upon, have the right – at our free option – to supply and deliver 10% more or less than the quantity indicated.
8) If a period of delivery for the goods has been agreed upon between the Buyer and ourselves, this shall merely imply that we shall, to the best of our ability, comply with the period agreed upon. The Buyer obligations shall remain unaffected thereby.
9) A period of delivery shall not commence until the agreement has been concluded in terms of article II thereof and until the Buyer has fulfilled all his obligations towards us.
10) If a period of delivery and/or time of delivery should be exceeded by us, the Buyer shall not be entitled to base thereon the right to claim a dissolution of the agreement and/or compensation of any damages whatsoever and his obligations shall remain unaffected thereby. But if the Buyer fails at the agreed time to call or nominate for delivery, to provide transportation or take delivery at the place or destination, for whatsoever reason, he shall be automatically in default, without any notice required, and we shall at our option be entitled to consider the agreement immediately cancelled in whole or in part, without any judicial intervention being required, and without any prejudice to our right to claim damages from the Buyer, or to store, or to procure the storage of the goods, in whole or in part, for the account and risk of the Buyer, and to charge the Buyer the expenses thereby incurred. The damages referred to are fixed at a minimum amount equal to the difference between the market-price prevailing at the moment of the breach according to the mean of Plats' and the agreed price, without any prejudice to our right to claim to further damages.

ARTICLE IV

The price of marine fuel delivered hereunder shall be subject to inquiry (subject to inquiry means that the Buyer and the Seller must agree on the price before there is any obligation to sell or to buy such marine fuel as the Seller may have available). The Buyer shall also pay – unless otherwise agreed upon between ourselves and the Buyer – all applicable duties, taxes, fees and other costs including, without limitation, those imposed by Governments and Authorities, and barging and other delivery charges as in force at the date of quotation, all of which shall be included in the Sellers' invoices to the Buyers. In the event of any subsequent increase in such duties, taxes, fees and other costs, or any subsequent further charges, the price in question shall be increased accordingly. Once a bunker inquiry has been quoted, or a nomination accepted, the Sellers reserved the right to cancel supply or negotiate a new price if:
   a) The quantity required increases or decreases more than 10%,
   b) The quality of required specifications changes, or,
   c) The vessel's scheduled arrival date is delayed more than three (3) days.

ARTICLE V

Unless otherwise agreed upon, all our prices shall be exclusive of the costs of carriage to the destination desired by the Buyer. If it has been agreed upon by the Buyer and ourselves that the costs of transport shall form part of and be included into the selling price, then the provision of Article IV hereof shall apply to any change in the said costs of transport.

ARTICLE VI

The place of delivery shall be deemed to be that specific place at which the goods shall be loaded into any means of conveyance having the said destination agreed upon the Buyer and ourselves, regardless of whether the sale has been effected free domicile, f.o.b., c. and f., c.i.f., or any other similar condition.

ARTICLE VII

If at the time and place of loading the means of conveyance concerning goods sold by us have not yet been set apart for the Buyer, the time at which and place where the goods were set apart shall be deemed to be the time and place of delivery of the goods sold. The Buyer shall be deemed to have taken delivery of goods purchased at the time whereat and the place where the aforesaid delivery took place, and the Buyer shall as from that point of time bear the risk of goods purchased, including the risk of conveyance thereof. If the execution is partly dependant on the Buyers' co-operation, the Buyer shall – without any notice of default needed to be given – be in default if he fails to give his co-operation to the delivery of the goods sold at the agreed date or, when no date has been agreed upon, at a date fixed by us.

ARTICLE VIII

1) Delivery shall be made on a twenty-four (24) hour basis, seven (7) days per week, unless the Seller is prevented or prohibited by any regulations or restrictions of any Government, proper person, Port or other Authority from doing so.
2) The Seller is not responsible for loss or damage whatsoever arising from non-availability of marine fuel required. Delivery is conditional upon availability to Seller of the grade of marine fuel required by the Buyer in sufficient quantity to make the full delivery.
3) The Buyer shall make and be responsible for all connections and disconnections between the delivery hose of the Seller and the intake pipe of the Buyer's vessel, and the Buyer shall render all other necessary assistance and shall provide sufficient tankage and equipment on the vessel to which delivery is to be made, to receive promptly and efficiently all deliveries of marine fuel being supplied to the vessel. The Buyer shall provide steam – if required – to effect delivery.
4) The Buyer shall indemnify the Seller in respect of any damage or loss which may be suffered by the Seller or any servant, agent, crew member or on-shore personnel of the Seller as result of or concerning the connection and disconnection referred to and other matters concerning the delivery and taking on of marine fuel from the beginning of any such operation until the same shall have been separated from Sellers' bunker vessel.
5) From time to time, the Seller may issue, either in writing or otherwise, operational instructions to the Buyer, it's servants, agents, crew officials or Master and may – when so required – modify, amend or cancel the same. As long as these operational instructions are issued and enforced – whether in an original, amended or modified form – the Buyer, it's servants, agents, crew officials or Master shall fully comply with the same. The Buyer shall be liable for any loss or damage suffered by the Seller as a result of any failure so to comply.
6) All bunkering operations shall be under the absolute control of the Master of the Sellers' bunkering vessel. The Buyer's vessel shall submit to and obey all lawful orders, directions, and instructions of the Master of the Seller's bunkering vessel, with regard to coming alongside, mooring, accepting deliveries, casting off and any other matters in connections of such bunkering operation. The Master of Seller's bunkering vessel may request Buyer's vessel to have sufficient personnel fore and aft to pull in and to secure mooring lines when coming alongside, when moored and casting off. Failure to comply promptly therewith will incur responsibility by the Buyer for damages caused thereby. The Master of Seller's bunkering vessel may, in sole discretion, refuse to effect deliveries in adverse weather conditions or in any case where the Buyer's vessel fails to comply with his orders, directions or instructions aforesaid. The Seller shall not be liable for any loss, damage or delay resulting from the Master of the Seller's bunkering vessel refusing to effect deliveries on the above grounds or break down of the respective Seller's bunkering vessels or its facilities.
7) The buyer will pay or indemnify the Seller in respect of or against all claims or expenses incurred or resulting directly or indirectly on:
   a) Failure by the Buyer to take delivery of the full quantity ordered or available, whichever is the lesser, including, but without limit, any loss sustained in selling premium grades of marine fuel in a down graded form, overtime and any additional expenses incurred as a result of failure by the Buyer, it's servants, crew officers, Master, vessels or local agent to provide the Seller with notice (judged by the Seller to be sufficient) of amendments of delivery time or quantity (provided always that the Sellers reserves the right to decline to accept such amendments).
   b) Any act or admissions, whether negligent or otherwise, whatsoever arising, of the Buyers, it's servants, agents, crew officers or Master in connection with delivery of marine fuel, coming alongside, mooring, casting off and otherwise in connection with the bunkering operation.
   c) Demurrage at the Seller's rates applicable at the time of delivery (or as varied thereafter) together with all other expenses incurred in connection with delays caused by the Buyer to the Seller or its facilities in effecting deliveries. Copies of the Seller's demurrage rates are available on request.

8) Each particular quantity and/or grade of marine fuel delivered to a specific vessel nominated by the Buyer as the vessel to which delivery is required to be made, shall be deemed to be a separate transaction, and either party in any respect in default with regard thereto shall be liable accordingly.
9) We may oblige the Buyer to accept part deliveries.

ARTICLE IX

If we have agreed with the Buyer that the goods sold by us may only be dealt in and /or consumed in a specific area, the Buyer will be responsible for all costs, damages, loss and/or fines incurred, sustained and/or paid by us as a result of these sold goods being traded or consumed by any other person elsewhere. The Buyer shall save us harmless there-from. In the event this clause should turn out to be invalid, this will not affect the validity of the rest of the agreement, but only apply to this clause, which will then if legally possible be replaced by a valid, similar clause or clauses, having the same effect.

ARTICLE X

1) Payment to the Seller for the delivery and of other charges payable shall be made in full, without any set-off, discount or deduction, in agreed currency, in Venice. Payment to the Seller shall be due and shall be made by means of telegraphic transfer, quoting the Seller's invoice number and the Buyer's name, to the bank set forth on the Seller's invoice, no later than the due date quoted on the invoice, and in such a way that the Seller receive the net invoice amount, without any deduction for bank charges and/or commissions. The Buyer shall notify (or instruct its bank to notify) the Seller as soon as payment has been made, quoting the date on which payment was made, the amount, the name of the bank effecting the payment and details of the delivery and invoice(s) to which the payment relates. Such notification shall be made to the seller at fax number +390412380440.
2) A Seller's invoice (which may be sent by telex) shall be based on telex or other advise of the quantity delivered and of other charges if incurred and payment made pursuant to (1) above, shall be subject to such subsequent adjustment, as may be necessary, on receipt by the Seller of further details or as may be agreed by the parties to be necessary after detailed checking of the invoice.
3) If the applicable credit period specified in (1) above expired on a day when the Seller's bank is closed for business, the Buyer shall arrange for the payment in question to be made as aforesaid in such shorter period as will enable the payment to have been made by the last day within the applicable credit period when the Seller's bank was open for business.
4) Without limitation to the foregoing or to the Seller's other rights under the contract or otherwise, any payment not made on the due date shall bear interest at the rate of one and one half per cent (1 ½ %) per month (calculated on a 30 days per month basis) such interest to run from the due date until the date payment received by the Seller's bank. The Buyers shall pay such interest to the Seller within five days following receipt of the Seller's invoice for such interest. In addition to the foregoing, any payment not made within the due date will attract a late payment fee of US$ 500,00 (USDollar Five Hundred). In the event of payments made later than the due date The Buyer shall decay from the benefit of the credit as provided in (1) above, and all outstanding amounts, related to whatever supply, shall automatically become due at sight.
5) In the event that the Seller institutes legal proceedings for the collection of payments not made on the due date, all expenses incurred by The Seller in connection with such proceedings including, without limitation, attorneys' fees and court costs, shall be for the account of the Buyer.
6) Notwithstanding the foregoing provisions, at any time, and from time to time, the Seller may, if the Seller consider that it may be inadvisable to make deliveries to the Buyer on credit, request that the Buyer pay cash in advance or provide security for payment acceptable to the Seller.

ARTICLE XI

1) Sales shall be made on the credit to of the receiving vessel as well as on the credit of the Buyer. It is also agreed that we will have and may asset a lien against such vessel for the amount of the purchase price of said marine fuel oil and any other amounts due by the Buyer arising out of or connected with a sale and delivery of said marine fuel oil. In the event that an agreement is reached with an agent of the Buyer on behalf of the principal or principals, disclosed or undisclosed, or by the Buyer on behalf of itself and as agent on behalf of another principal or principals, disclosed or undisclosed, such agent and/or the Buyer, as the case may be, shall be jointly and severally liable with such principal or principals, or other principal or principals, as the case may be, for the due and proper performance of the contract and any payment due thereunder.
2) If the Buyer is in default in the manner as herein before mentioned, we shall, moreover, be entitled immediately to cancel deliveries still to be made to the Buyer without prejudice to our right to claim damages in respect thereof. If the Buyer is adjudicated bankrupt, applies for or has been granted moratorium in respect of his debts, looses the free control over his property or has in any other way apparently got into financial difficulties which justify the expectation that he will not make payment, we shall have the right to regard – without the intervention of any Court of Law being required – the agreement(s)made with or – as the case may be – parts thereof as results and to claim compensation for the damage or loss resulting from such dissolution.
3) All judicial and extra-judicial costs and expenses, including extra judicial costs, expenses and disbursements for our lawyers, which will be incurred by us in connection with such non-payment or delayed or by any other breach by the Buyer of these conditions shall be for his account. Ten (10) per cent of the amount to be claimed shall be charged by way of fixed extra-judicial costs and expenses without prejudice to our right to prove that the amount of such costs and expenses was in excess of the said percentage and to claim in that event payment of such excess amount.
4) Except as expressly provided in the contract, the Seller shall not be liable for consequential, indirect or special losses or special damages of any kind arising out of or in any way connected with the performance of failure to perform the contract.

ARTICLE XII

1) The ownership in the goods sold shall pass to the Buyer after the same have been delivered to him and the selling price and any additional charges incidental thereto due and payable by him shall have been satisfied. Also in the event of our having granted to the Buyer for any cause whatsoever a credit and in case of any other indebtedness on the part of the Buyer as against us, the ownership in goods delivered by us shall pass only if we have given the Buyer effectual receipt and discharge therefore.
2) If goods delivered by us to the Buyer are sold by him to third parties and over which a right of ownership on our part still exists, he shall be obliged to preserve, in our mane, his personal right of ownership to such goods relating to this transactions, and beforehand to transfer to us all rights as against those third parties, including the right of payment. The Buyer is not allowed to compensate any claim on third parties arising out of such resale with claims of such third parties on the Buyer. He is obliged to resell only under the condition of non-compensation. Any compensation that has taken place notwithstanding the above conditions will not be valid as against us.

3) So long that the Buyer is indebted to us in any sum in respect of any consignment purchased from us and resold by him to third parties, each payment received by him from such third parties shall in that event be received by the Buyer for and on our behalf, and the Buyer shall keep the sums so received solely for our benefit; the Buyer shall immediately pay over the said sums to us until he has been fully discharged of all of his debts due to us on any account whatsoever. The Buyer shall not be entitled to offer goods – the ownership whereof is still held by us – as a pledge or to transfer the same by way of security.
4) If goods delivered by us are mixed up with or – as the case may be – into other products, the Buyer shall in that event previously transfer to us his rights of ownership – as the case may be –his joint rights of ownership to those of the products as security for all debts due from him, respecting the goods supplied and delivered by us.
5) If, for any reason – for example rumours or any such negative information we have obtained from contacts of our own – we are of the opinion that the buyer cannot fulfil his obligation concerning punctual payments towards us, we shall be allowed under these conditions, to insist upon a bank guarantee or similar from the Buyer. If, however, the Buyer is unable to immediately provide a bank guarantee or similar before payment of our invoice is due, we shall be allowed under these conditions to take whatever action we feel fitting to safeguard our interests.

ARTICLE XIII

1) In the event that the Buyer notifies the Seller in the notice provided to the Seller pursuant to Article VIII above, of any vessel requiring delivery by barge, the Seller undertakes to provide this service within normal harbour limits, where and when the Sellers or the Seller's supplier has the necessary facilities available, the vessel to provide a free side and steam if required to effect such delivery, and the Buyer to pay the Seller all amounts due according to current barging rates at the port concerned, and all other charges incurred, including, without limitation, mooring and unmooring and port dues, if any.
2) In the event a quantity of marine fuel oil ordered is already loaded on board one of our barges, and the Buyer advises us that he wishes to reduce said quantity, we may consent hereto. The Buyer, however, shall be liable for all damages arising as a consequence of said reduction, which could include extra barging costs, and the difference between agreed sale price and final sale price.
3) In the event a quantity of marine fuel oil ordered and tendered by us to the vessel cannot be discharged into the vessel, wholly or partially, for which this quantity is destined for whatsoever reason at the agreed time and place, we shall, without prejudice to our other contractual rights, be entitled to rescind our agreement with the Buyer, wholly or partially, without any judicial intervention being required and to sell the quantity ordered or undischarged remained thereof to third parties. The Buyer shall be liable for all damages arising as a consequence thereof, which could include our extra barging costs and the difference between the agreed sale price and the final sale price.

ARTICLE XIV

Deliveries shall be made during regular business hours, unless otherwise required and permitted by port rules and regulations. All work in connection with the delivery effected outside normal working hours or on public or dock holidays or Sundays or Saturdays, shall be paid for by the Buyer at the rates then applicable for such work in addition to the price. All mooring and unmooring charges and port dues, if any, shall be paid by the Buyer.

ARTICLE XV

Neither the Seller nor his suppliers will be liable for any demurrage or loss incurred by the Buyer due, directly or indirectly, to weather (whether or not unusual), local congestion affecting the Seller's delivery facilities, the prior commitment of and/or non-availability and/or malfunctioning of bunkering barges or any contingency (as defined in Article XVII). Deliveries shall be made on a *"first come – first served"* basis, subject to priority of tankers working cargo at the port and the usual priority of passengers and postal vessels. In the event of any delay by the Buyer in the use of delivery or barging facilities, or in vacating a berth, the Buyer shall pay demurrage and detention charges at the rates specified by the Seller or his suppliers.

ARTICLE XVI

Where agreements with employees' organizations apply, the Seller shall not be liable for inability, as a consequence, to deliver on public, customary or dock holidays.

ARTICLE XVII

1) The Seller or his suppliers shall not be liable for loss, damage or demurrage due to any delay or failure in performance:
    a) because of compliance with any order, regulation, request or control of any governmental authority or any nation, or person purporting to act thereof, which in the opinion of the Seller or his suppliers is or purports to be applicable to any performance hereunder, regardless of whether or not any such order, regulation, request or control is in fact legally enforceable against the Seller or his suppliers, or
    b) when the supply of marine fuel or any constituent thereof or any facility of production, manufacture, transportation, distribution or delivery contemplated by the Seller or his suppliers is interrupted, unavailable or inadequate because of war, hostilities, public disorders, acts of enemies, sabotage, strikes, lockouts, labour or employment difficulties, fires, acts of God, accidents, breakdowns, or weather conditions, or any cause beyond his control whether or not similar to any of the foregoing, or
    c) for any other cause whatsoever which is not within the control of the Seller or his suppliers. The expression "for any cause whatsoever which is not within the control of the Seller or his suppliers" shall be deemed to include, without limitation, the failure, cessation, termination or curtailments of any of the source of supply of crude oil and petroleum products of the Seller or his suppliers. Without limitation of the foregoing, the Seller or his suppliers shall not be required to remove any such cause or replace the affected source of supply or facility if it shall involve additional expenses, or a departure from his normal practices. The Seller or his suppliers shall not be required to make up deliveries omitted due to any of the causes specified herein. The Buyer understands that in the event that there is any for of price control, rationing or allocation imposed on the Seller's sales of marine fuel by any governmental body in the country or state effective at the port where the Buyer desires to purchase marine fuel, the Seller has the right to either:
        I. suspend or cancel deliveries of marine fuel contracted for herein for such period or periods as the Seller may determine it requires to resolve uncertainties raised by such governmental actions, or
        II. allocate such quantities of marine fuel to the buyer as the Seller may determine. In the event that emergency measures have been activated within the terms of the agreement on an International Energy Program signed at Paris

on November 18th, 1974, the Seller has the right to suspend or cancel deliveries of marine fuel contracted herein, or allocate such quantities of marine fuel as the Seller shall determine, or cancel this contract.

2) Without prejudice to all the other provisions laid down in these conditions with regards hereto, we shall only be liable for any damage or loss if the Buyer proves that such damage or loss is attributable to wilful intent or to gross fault on our part to be put on an equality therein. We shall under no circumstances be liable for any damage or loss caused by third parties contracted by us. The Buyer shall save us harmless from any liability as against third parties in excess thereof. No claim of any kind whether as to goods delivered or non-delivered shall exceed the purchase price of goods with respect to each such claim as made, and in no event shall we be liable for any prospective or speculative profits or special indirect or consequential damages, inflicted directly or indirectly on persons, merchandise or undertaking of Buyer and/or third parties. Buyer shall save us harmless against any claims from third parties in regards thereto.

ARTICLE XVIII

The Seller may assign all or any of his rights and obligations. Any assignment by the Buyer without the Seller's written consent shall be void.

ARTICLE XIX

The agreement entered into with the Buyer shall be governed by the Italian Laws, and any dispute whatsoever arised will be non-exclusively referred to the Court of Venice. The application of the Uniform Law on International Sales shall be excluded. The International Rules for the Interpretation of trade terms used in trade contracts as revised in 2000 by the International Commerce (INCOTERMS 2000) or their latest version shall apply hereto unless the terms and provision hereof expressly provide to the contrary.

Omega Bunker Srl                                                                                               **effective May 1st, 2010**